THOMAS GOUGH ET UX. *v.* BOARD OF ZONING APPEALS FOR CALVERT COUNTY

[No. 651, September Term, 1973.]

*Decided June 25, 1974.*

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*Thomas L. Starkey,* with whom were *Pitrof & Starkey* on the brief, for appellants.

*Larry D. Lamson* for appellee.

MOORE, J., delivered the opinion of the Court.

In August 1972 the Zoning Inspector for Calvert County formally notified appellants that the automobile junkyard on their twenty-five acre tract in Lusby and a recently acquired 1959 mobile home were in violation of the comprehensive zoning regulations which had become

effective on June 29, 1967. They contested this determination by an appeal to the Board of Appeals for Calvert County to which they also applied, in the alternative, for a variance permitting the continuation of the junkyard and the utilization of the mobile home. The three-member board unanimously denied the appeal and the application for the variance.

The Circuit Court for Calvert County (Bowen, J.) in a memorandum opinion and order affirmed the Board's ruling.

On this appeal Mr. and Mrs. Gough seek a reversal on the ground that the Board of Appeals failed to make findings of fact relevant to critical issues raised with respect to the operation of the junkyard and for the further reason that the provision of the County Zoning Ordinance requiring termination of certain non-conforming uses within a two-year period, is unconstitutional. While we consider that the Board, as a matter of sound administrative practice, should have spelled out its finding in greater detail, we find no fundamental error; nor do we perceive that the claim of unconstitutionality can be sustained.

I

Most of the operative facts are undisputed. Appellants acquired their property in 1936. The land is in an "A-1" (agriculture) district and has substantial frontage on State Route #4. Until shortly before the hearing before the Board Mr. Gough was employed full-time away from the property and it was not used for any agricultural purpose. In the late 50's, the acreage came to be used for the storage of discarded automobiles and other vehicles. After a time, Mr. Gough engaged part-time in the sale of parts from these vehicles. He employed no personnel, permitting the customers to remove the parts themselves. In 1972 the gross proceeds came to approximately $500.00. There were two permanent buildings on the property — one in which the appellants have resided with their 13 year old grandson and the other, a shed, used for storing parts. At the time of the hearing before the Board of Appeals in February, 1973, Mr. Gough

testified that he had "more recently" stored some parts in the dwelling. Under questioning by the Zoning Inspector about the storage of parts he stated:

"Q. When did you start keeping parts in your dwelling?
A. Well, a right good while ago, I've been keeping things in it.
Q. Well, can you be more specific?
A. Oh, I'd say two years.
Q. How about the shed? How long have you been keeping parts in the shed?
A. They have been in there a good while. I guess about three years."

The above testimony becomes crucial because junkyards are not permitted uses in any of the nine districts established by the Calvert County Zoning Ordinance and because of the following termination clause pertaining to non-conforming uses set forth in § 19.02 of the Ordinance: [1]

"Any non-conforming use which is *conducted primarily on open land and does not utilize any permanent building or structure* shall be discontinued within two [2] years from the date of enactment of this Ordinance." (Emphasis added.)

Thus, appellants' junkyard would have to be discontinued as of June 29, 1969 (two years after the effective date of the Ordinance) unless, when the Ordinance was enacted in 1967, any permanent building or structure was being utilized. Mr. Gough's testimony, uncontradicted at the hearing from other sources, placed the use of the shed for storage of parts in about 1970 and the use of the dwelling for that purpose in 1971. The relevant portion of the Board's opinion is as follows:

---

1. This section also contains a subsection "Restrictions" requiring approval of structural alterations to non-conforming buildings and limiting the extent of such alterations and containing the following clause: "No extension shall be permitted for junkyards under provisions of this section."

"* * * the Zoning Ordinance contemplated that all junkyards might be continued in operation for a limited time after the ordinance took effect but that with a certain exception, all such operations be discontinued on or before the date of June 29, 1969.

"Mr. Gough's operation involves a very large number of discarded vehicles which have been placed on his property for many years. The Board concludes that at the time of the zoning inspector's letter, Mr. Gough was in violation of the ordinance and subject to prosecution in the criminal courts.[2] Accordingly, his appeal from the action of the zoning inspector is hereby dismissed.

"He asks for a variance to permit him to operate the junkyard for some reasonable period of time; however, to do so would involve authorizing a use clearly prohibited by a zoning ordinance and we do not consider that we have the authority to make this type of variance. In fact, it seems to be specifically prohibited by the ordinance. * * *."

It is apparent that the Board made no express finding either that the junk operation was conducted primarily on open land or that no permanent building or structure had been used in connection therewith at the time in question. The result, appellants maintain, is that the Circuit Court was required "to speculate as to what facts the Board relied upon in reaching its decision" and to make what amounted to an independent evaluation of the facts.

In decrying the absence of an express finding by the Board on the issue of appellants' use of a permanent building at the time of the enactment, appellants point to a problem, substantial enough in the circumstances of other cases, but transparent upon the facts presented here. Anderson,

---

2. On December 15, 1972, criminal proceedings were initiated against Thomas Gough upon the complaint of William C. Campbell, Zoning Inspector for the Department of Inspection and Permits, in accordance with Article 22, § 22.00 of the Zoning Ordinance. By agreement of the parties, prosecution of the charges was postponed pending final determination of the appeal to the Board of Appeals.

*American Law of Zoning,* § 16.41, states succinctly the reasons why express findings should be made by administrative agencies:

> "Given express findings, the court can determine whether the findings are supported by substantial evidence, and whether the findings warrant the decision of the board. If no findings are made, and if the court elects not to remand, its clumsy alternative is to *read* the record, *speculate* upon the portions which probably were believed by the board, *guess* at the conclusions drawn from credited portions, *construct a basis* for decision, and *try to determine* whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record." (Emphasis added.)

The Court of Appeals in recent years has shown increasing impatience with the failure of administrative boards, whether or not required by statute, to accompany their decisions by specific findings of fact.[3] In this term alone the Court has on three occasions called attention to this recurrent problem. *Turner v. Hammond,* 270 Md. 41, 310 A. 2d 543 (1973); *Valenzia v. Zoning Board of Howard County,* 270 Md. 478, 312 A. 2d 277 (1973); *Hooper v. Mayor and City Council of Gaithersburg,* 270 Md. 628, 313 A. 2d 491 (1974). In *Baker v. Board of Trustees,* 269 Md. 740, 309 A. 2d 768 (1973) Judge Singley, writing for the Court, went so far as to say (p. 747):

---

3. Article 21, Section 21.02, "Hearing and Appeals," of the Calvert County Zoning Ordinance requires only that:

"The Board of Appeals shall adopt its own rules and regulations which shall fix a reasonable time for hearing an appeal, shall provide for public notice and shall decide the same within a reasonable time after it is submitted. At the hearing any party may appear in person or by agent or attorney. Any party adversely affected by a decision of the Board may appeal to the Circuit Court

"As long ago as *Adams v. Board of Trustees*, 215 Md. 188, 195, 137 A. 2d 151, 155 (1957), we reversed, as not supported by the evidence, an action taken by the Board without a finding of fact, or an assignment of reasons for the result reached. . . . To be certain that the teaching of *Adams* is not again overlooked, we propose to remand, for appropriate findings of fact, any case which hereafter reaches us in the posture of this one.

"This is no more than a recognition of the fundamental right of a party to be apprised of the facts relied upon by the agency, [citation omitted] and, even in the absence of a statutory provision, is frequently required by a court as an aid to judicial review [citations omitted]."

In *Baker* the Court did not remand, however, noting that:

"Only the circumstance that the record before us makes it clear that the Board could have reasonably reached the result that it did . . . saves this case from a similar fate."

Similarly, in *Hooper, supra,* the Court recalled its admonition in *Baker* but said:

"We shall not, however . . . remand this case to the Mayor and Council for a finding of facts. To do so would be futile. It is clear that the only possible finding would be that there is a complete lack of any evidence of a substantial change in the character of the neighborhood."

---

of Calvert County in the manner set forth in Article 66 B of the Annotated Code of Maryland."

By contrast, Article 23, pertaining to petitions for amendment of the zoning ordinance or maps, addressed to the County Commissioners, provides (Section 23.02) that "[w]here the purpose and effect of the proposed amendment is to change the zoning classification, the County Commissioners shall make finding of fact in each specific case including, but not limited to, [certain enumerated factors]."

And in *Valenzia* the Court concluded:

> "The action of the Zoning Board here might be said
> to be on the ragged edge but, in the circumstances,
> we do not think anything would be gained by
> remanding the case for further consideration."

So, here, while clearly the better practice would have been for the Board to make express findings, the mere surmise that Mr. Gough might have erred in his recollection of when he began storing parts in the buildings is not opposing evidence sufficient to warrant a remand for an explicit finding by the Board as between conflicting versions of fact. Not only could the Board "have reasonably reached the result that it did," but on the testimony before it, it is hard to see how it could have reached a contrary result. Clearly the Board was not required to make an express finding as to the reliability of Mr. Gough's memory, and the facts to which he testified, uncontradicted from other sources, permitted only one conclusion. A finding that appellants' junkyard operation was conducted primarily on open land and did not utilize a permanent building or structure at the time of the enactment of the zoning ordinance was implicit in the Board's determination that it did not qualify as an exception to the requirement of termination and was, therefore, in violation of the ordinance.

## II

Appellants next contend that "Article 19, Section 19.02 A.1 of the Calvert County Zoning Ordinance which requires that certain unspecified non-conforming uses be terminated within a two-year period without providing any compensation" is not "a true amortization statute" and "is confiscatory and unconstitutional, both generally and as applied to them." In particular they claim it "contains a completely arbitrary classification on its face" in providing for the termination of "no specific use or category of uses in any specific [use] district."

The constitutionality of zoning ordinances "amortizing" non-conforming uses by compelling their termination after a reasonable and appropriate specified time is firmly

established in Maryland,[4] and appellants, recognizing this, raise no such broad challenge to the ordinance. Nor do they question the general validity of such ordinances that single out junkyards for elimination,[5] conceding indeed that "had the Ordinance required the termination of all junkyards in [for example] A-1 Districts by June 29, 1969, the Goughs would have no grounds to assail its constitutionality." Instead they argue that there is "no clear basis for classifying *all* non-conforming uses in the same amortization period which are (in the words of the ordinance) 'conducted primarily on open land and do not utilize any permanent building or structure.'" They illustrate: "It would not, for example, be reasonable to expect the owner of a junkyard to amortize his investment in the same period of time as could the owner of a commercial parking lot or perhaps a miniature golf course. Nor could the owner of a commercial outdoor marina be expected to recoup his investment as quickly as the junk dealer." And just as there is no differentiation between uses, they argue, so there is no limitation in the ordinance with respect to the use districts to which amortization is to apply.

Any merit possessed by these contentions relates not to the constitutionality of the statutory classification as such but solely to its applicability to appellants and their individual situation. As regards the classification itself, appellants fail to recognize the principle generally applicable to regulations under the police power, including zoning regulations, that the legislative body

> ". . . has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. . . . If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state

---

4. Grant v. City of Baltimore, 212 Md. 301, 129 A. 2d 363 (1957); Eutaw Enterprises, Inc. v. City of Baltimore, 241 Md. 686, 217 A. 2d 348 (1966); Shifflet v. Baltimore County, 247 Md. 151, 230 A. 2d 310 (1967).

5. Cases involving such ordinances are collected in Shifflet, *supra*, 247 Md. at 157, 158.

of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis." *Allied American Co. v. Comm'r,* 219 Md. 607, 623, 150 A. 2d 421 (1959).

In the case of amortization provisions appellants correctly point out that "constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss." *Grant v. City of Baltimore, supra,* at 315. It can scarcely be argued, however, that no state of facts can reasonably be conceived justifying the county-wide elimination over a uniform period of non-conforming uses conducted (a) primarily on open land *and* (b) not utilizing any permanent building or structure,[6] nor that section 19.02 A.1 on its face does not reflect a reasonable balancing of public gain and private loss. Whether applicable to junkyards, marinas or commercial parking lots, such an ordinance is not arbitrary and unconstitutional on its face if it reveals a reasonable relationship between the *nature* of the non-conforming uses to which it applies and the period of amortization. As stated by Chief Judge Prescott in *Stevens v. City of Salisbury,* 240 Md. 556, 570, 214 A. 2d 775 (1965):

---

6. One such rationale, although not necessarily that entertained by Calvert County, was stated by the New York Court of Appeals in Harbison v. City of Buffalo, 152 N.E.2d 42 (1958), quoted with approval in Shifflet v. Baltimore County, *supra,* as follows:

"We cannot say that a legislative body may not in any case after consideration of the factors involved, conclude that the termination of a use after a period of time sufficient to allow a property owner an opportunity to amortize his investment and make other plans is a valid method of solving the problem.

"To enunciate a contrary rule would mean that the use of land for such purposes as a tennis court, an open air skating rink, a junkyard or a parking lot — readily transferable to another site — at the date of the enactment of a zoning ordinance vests the owner thereof with the right to utilize the land in that manner in perpetuity, regardless of the changes in the neighborhood over the course of time. In the light of our ever expanding urban communities, such a rule appears to us to constitute an unwarranted restriction upon the Legislature in dealing with what has been described as 'one of the major problems in effective administration of modern zoning ordinances.' "

"True amortization provisions almost if not universally call for a termination of non-conforming uses after the lapse of a reasonable, specified period in order that the owner may amortize his investment (the reasonableness of the period depends upon the nature of the non-conforming use, the structures thereon, and the investment therein) . . . ."

We conclude that section 19.02 A.1 of the Zoning Ordinance is not unconstitutional on its face as confiscatory or as arbitrary and unreasonable and hence as a denial of due process.

Furthermore, appellants have offered no persuasive evidence that the ordinance is unreasonable *as applied to them. See, Goldblatt v. Town of Hempstead,* 369 U. S. 590, 82 S. Ct. 987, 8 L.Ed.2d 130 (1962).

Mr. Gough's cash investment in the approximately 200 vehicles on his property was minimal. He had actually purchased "very few" of them, at a cost of "maybe $10.00, $15.00" each, the rest having been abandoned on his property. As previously indicated, he employed no one in this part time, very small business, relying on the customers to "take the parts off themselves," and in 1972 he had sold a total of about $500 worth. In addition, he had been "working steady" elsewhere but since undergoing a recent operation was "not sure" he would return to work ("I may and I may not") and was considering instead retiring and devoting himself to the junkyard operation. To Mr. Gough's knowledge there was no mortgage on the 25 acres owned by himself and his wife. He was insistent, however, that he did not "want to sell any of it." The zoning inspector informed the Board that in the event it ruled in favor of the County, arrangements had been made for the removal of the cars from the Gough property without cost to the owners.

Appellants complain that they have no place to move their junking operation, there being no district under the Zoning Ordinance where such a use is permitted. On this account, they attempt to distinguish *Shifflet v. Baltimore County,*

*supra,* footnote 5, in which the Court of Appeals rejected the contention of two junkyard owners that an ordinance requiring the elimination of junkyards in all residential zones within two years was unconstitutional as applied to them. In *Shifflet* the Court noted, *inter alia,* that the owners had presented no testimony that they were unable to obtain land elsewhere in the county in a permitted zone, nor at what price.[7]

*Shifflet,* as well as the authorities upon which it relies, is clearly applicable. There the owners were plainly involved in the junkyard business on a full time basis. They dealt in wrecked cars, the cars being towed to their yard and dismantled piece by piece. The parts were sold as replacements and after the cars were dismantled, the residue was sold for scrap. At the time of suit each owner had at least 1000 cars on his lot. Nevertheless, the Court of Appeals rejected claims that it would be unreasonably expensive to move these operations and would require at least five years for the owners to obtain full and fair compensation. In the light of all the testimony the Court found that the two year grace period for elimination of the non-conforming use was not unreasonable as applied to the particular situations of the appellants.

We conclude here that Section 19.02 A.1 of the Calvert County Zoning Ordinance is not "unduly oppressive" upon the Goughs. *Goldblatt, supra; Potomac Sand & Gravel v. Governor,* 266 Md. 358, 293 A. 2d 241 (1972). They are within the scope of the two-year amortization provision (a period which should have expired on June 29, 1969) and they are, indeed, precluded from engaging in the junkyard business elsewhere in the County. On the other hand, their operation has been marginal and the ordinance obviously does not

---

7. The Court also found significant that "neither appellant, after the passage of the ordinance, began an orderly liquidation of his stock of wrecked cars or attempted to set up another place of business for them," but on the contrary, "each continued to buy additional wrecks." Appellants here argue, by contrast, that they "had no notice, prior to August 8, 1972, that Article 19, Section 19.02 A.1 applied to their junking operation." We note that Mr. Campbell told the Board: ". . . I have had numerous conversations with [Mr. Gough]. . . . I tried to get him to do something since 1969."

deprive them of every reasonable use of their property. We are not persuaded that the minimal private loss they stand to sustain by the termination of their non-conforming use is so burdensome as to outweigh the public gain achieved by enforcement of the provisions of the ordinance. They have not shown the ordinance to be unreasonable or invalid in its application to them. *Potomac Sand & Gravel, supra; Stevens v. City of Salisbury, supra; Baltimore v. Borinsky,* 239 Md. 611, 212 A. 2d 508 (1965).

*Judgments affirmed; costs to be paid by appellants.*