575 A.2d 750

**Rosemary MORTIMER, et al.**

v.

**HOWARD RESEARCH AND DEVELOPMENT CORPORATION, et al.**

**No. 1410, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 27, 1990.

434

Philip H. Gold, Ellicott City, and Robert H. Levan (Bernard A. Cook and Levan, Schimel, Richman, Belman, Abramson & Scanlan, P.A., Columbia, and Barbara A. Gold, Baltimore, on the brief), for appellants.

Paul T. Johnson, Deputy County Sol., Barbara M. Cook, County Sol. and Elizabeth B. Entwisle, Sr. Asst. County Sol. on the brief, Ellicott City, for appellee, Howard County Bd. of Appeals.

Susan M. Reutershan (John J. Delaney and Linowes and Blocher, Silver Spring, and James D. Lano, Columbia, on the brief for appellees, Howard Research and Besche Oil Corp.

Argued before MOYLAN, GARRITY, and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

This case presents two questions: (1) did the trial judge err in reversing a remand by the Board of Appeals of a Planning Board's decision in Howard County where the Board of Appeals is alleged to have exceeded its scope of review? and (2) which of these two agencies, if either, has standing in an appeal to the circuit court and to this Court? [1] We conclude that the Board of Appeals wins on the decision issue.

Since the Planning Board and the Board of Appeals are bound by our holding that the circuit court erred in reversing the Board of Appeals decision, their appeal is now academic. Moreover, both Boards were more than adequately represented in their respective claims by the actual litigants. Even if we were to decide the standing issue, the judgment that the protesting owners appeal from would be unaffected. Hence, interesting as it may be, we need not and will not decide the standing issue. Before we delve into the facts involving this particular property, a summary of the New Town development process is necessary to understand the procedural and factual background of this case.[2]

## PLANNING PROCESS

Section 119 [3] of the Howard County Zoning Ordinance (1984) sets out the procedure for establishing a New Town

---

1. Both the Planning Board and the Board of Appeals are represented by the County Solicitor. Both Boards, perhaps walking a fine line, refrain from arguing that the trial judge erred in permitting standing to the other county board, but merely assert their own standing and leave it to appellees to fight this battle on behalf of the Planning Board. Appellees go further and contend the Board of Appeals has no right to defend in this Court. Unfortunately, appellants rise to the bait and argue in their reply brief that the Planning Board has no standing. Why either appellants or appellees have any real interest in this standing issue is lost upon us.

2. New Town District in the instant case is today's Columbia.

3. Under Howard County's comprehensive rezoning process, § 119 of the Regulations was reenacted effective August 2, 1985 into § 122

District and the permitted land uses.[4] The process essentially consists of the adoption of a Preliminary Development Plan (PDP)[5] and a Final Development Plan (FDP). No land within a New Town District established by a PDP may be developed unless a FDP for the specific area is approved by the Planning Board. § 119.B.6.d. This process is initiated by the filing of a Comprehensive Sketch Plan (CSP)[6] for approval by the Planning Board. The FDP is also a series of drawings and must conform to the CSP previously approved by the Planning Board, including the FDP Criteria adopted. The FDP criteria regulate the general locations of all buildings and structures, height limitations, parking

without substantial change. Citations will be to the Regulations as they existed prior to August 2, 1985, the time the relevant actions occurred.

4. The term "New Town" is defined as an unincorporated city, town or village which
 "a. is designated and planned as an economically and culturally self-sufficient community with a population of a[t] least 20,000 inhabitants; and
 "b. is so designed and planned as to meet all of the requirements specified in this Section 119."
 Section 119A.1.a. & b.

5. A New Town District is created by the adoption of a PDP by the Howard County Zoning Board (Zoning Board) after review by the Planning Board and various County agencies and the holding of public hearings. The PDP is a generalized drawing for the New Town District. It sets out the major planning assumptions and objectives, the layout of major roads and highways, and the general location of various land uses. The Zoning Board, in considering the adoption of a PDP, must consider, among other things, the General Plan for Howard County; the effect of the New Town District on surrounding properties and road systems; the most appropriate use of the land; the provision of community utilities and facilities; the needs of the County as a whole and of the particular area considered; and the character of the land within the proposed New Town District and its suitability for particular proposed uses. *See generally,* § 119.B.

6. The CSP is a series of drawings, setting forth, with respect to the phase of the New Town District being proposed for development, the approximate boundaries and acreage of the permitted land uses together with appropriate text material (the FDP Criteria). A public hearing is required prior to final approval of a CSP if it includes land bordering on property not within the New Town District. *See generally,* § 119.C.8.

requirements, setbacks, etc. § 119.C.1. The only differences between the FDP and the CSP are the scale of the drawings, the exact location of streets, and the description of land use areas by precise courses and distances. *Compare* §§ 119.C.1–7 and 119.C.8.

After approval by the Planning Board, the FDP is recorded among the Land Records for Howard County and provides that the land use provisions of the FDP "shall bind the property covered thereby ... with the full force and effect of specific Zoning Regulations." § 119.C.11.

## HISTORY OF THIS PROPERTY

In November, 1972, the Planning Board held a public hearing on a CSP for a 189–acre parcel referred to as Hickory Ridge Village, Section 1, Area 2, Clements Crossing Neighborhood. In December, 1972, the Planning Board approved the CSP for FDP 136, including the criteria for the entire site and specific designation of land uses for approximately 175 acres. There was, however, no specific designation of locations within the remaining 14 acres for a proposed 11–acre school site, two and one-half acres of open space land uses, and .55 acres of Employment Center or Commercial land use (Employment Center). It is this .55 acres of Employment Center which is the center of this controversy. The adopted CSP did not show any specific location for the Employment Center because the Howard County Board of Education had not decided on which portion of the 14–acre area it would locate the 11–acre school site. Initially, the CSP proposed to locate the Employment Center 600 feet southwest of its current location off Martin Road, with access off Quarterstaff Road.

On May 16, 1973, the Planning Board approved the FDP for Phase 136, part I, which included the FDP criteria approved in connection with the CSP. The Planning Board did not address the site for the school or Employment Center as the School Board had still not determined the precise site for the school. In January, 1974, the Planning

Board approved Phase 136, part II, without public notice or hearing, for the 14 acres remaining in the phase which were not covered by Phase 136, part I.[7] The approval of FDP, Phase 136, part II, located the Employment Center at a location off of Martin Road, not Quarterstaff Road.

The Howard Research and Development Corp. (Howard Research) and The Besche Oil Corp. (Besche), appellees, became and at present are the owner and contract purchaser, respectively, of the subject .55-acre[8] parcel of land. They petitioned for approval of an amendment to the boundaries as shown on the CSP for the subject parcel and approval for a convenience store to be located on the same site. At least in part because the relocation of the subject parcel was approved in 1974 without the benefit of public hearings, the Planning Board held two public hearings in August and September, 1984 to consider appellees' petition.

Nearby property owners and appellees presented evidence to the Planning Board regarding the proposed amended CSP. Substantial community testimony was provided at the hearing regarding the effects of establishing a convenience store at that location.

The Planning Board, in its Decision and Order dated October 31, 1984, stated that the development of an Employment Center off Martin Road could have an adverse impact on adjacent residential uses if the most intensive uses permitted under the criteria were established. The Planning Board went on to say that the impact could be ameliorated through the elimination of certain more intensive permitted uses and the FDP was amended to reflect those excluded uses. The Planning Board articulated that the subject parcel could be developed since there was no remaining area in which it could be placed.

---

7. Counsel for appellants and appellees agree no hearing was had at that stage, although one was required. But they agree that lack of hearing is only tangentially involved here since a hearing was had prior to the action of the Planning Board which is at issue here.

8. It is, from time to time, described in the record as .60 acres.

Several owners of nearby properties appealed from the Planning Board's decision to the Board of Appeals, where Howard Research, the Planning Board, and Besche appeared as appellees. The proceedings were conducted on the basis of the record developed before the Planning Board.[9] In its Decision and Order dated May 29, 1985, the Board of Appeals concluded that, based on the statements in its decision and order, the Planning Board had failed to evaluate properly the relevant legal criteria in granting the amendment and, therefore, remanded the matter to the Planning Board for reconsideration.

From the adverse decision of the Board of Appeals, Howard Research, the Planning Board, and Besche filed timely appeals to the Circuit Court for Howard County; the appeals were consolidated. The Board of Appeals filed an answer as an appellee in the circuit court, and several neighboring property owners intervened as additional appellees.

A hearing on the merits of the administrative appeal was held in circuit court in June 1989. In its Memorandum and Order dated August 4, 1989, the circuit court reversed the decision of the Board of Appeals. The court held that the decision of the Planning Board was supported by substantial evidence in the record and that it should have been affirmed by the Board of Appeals. This appeal and cross-appeal followed.

The issues in the appeal of Mortimer and other protes-

---

**9.** Appellants suggest that the proceeding before the Board of Appeals was not entirely on the record because new testimony was accepted. The testimony consisted of a summary of the record before the Planning Board and an orientation of the Board to the terms of art in the New Town development process. The Board of Appeals also accepted a transcript prepared by a licensed court reporter to supplement inaudible portions of the official transcript. Upon our review of the transcript before the Board of Appeals, we do not find this constitutes new testimony or substantive evidence which would render the proceedings *"de novo."*

tants [10] involves the propriety of the decision of the circuit court overruling the Board of Appeals. Specifically, whether the trial court erred

— in the standard of review it applied;

— by substituting its judgment for that of the Board of Appeals; and

— in ruling that the Board of Appeals substituted its judgment for that of the Planning Board, where the Board of Appeals found the decision of the Planning Board to be clearly erroneous, and remanded for reconsideration, because it concluded that the Planning Board's approval of the use was based on an erroneous application of the standards, namely, that no other location was available for it.

We would state it more succinctly: What is the standard of review by the trial court of the Board of Appeals decision and did it properly apply that standard?

Before we address these issues, we first set forth the applicable standard of review at each level of appeal.

## STANDARD OF REVIEW
### —Circuit Court—

 The role of the circuit court in reviewing the Board of Appeals decision is set forth in Md.Code Ann. Art. 25A, § 5(U) (1957, 1987 Repl.Vol.), which provides in pertinent part:

"Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, *or if such decision is not in accordance with law,* to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the

---

10. Appellants in this action are the protesting property owners, Rosemary Mortimer, James and Katherine Wu, Anne Bowman and Betty Jesneck.

circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive." (Emphasis added.)

Hence, the circuit court's standard of review is limited to whether the Board of Appeals decision is or is not "in accordance with the law."

The Court of Appeals has stated that the court may set aside, as "not in accordance with law," a decision of the Board of Appeals which is arbitrary, illegal or capricious. *Levy v. Seven Slade, Inc.*, 234 Md. 145, 149, 198 A.2d 267 (1964) (determination of reviewing court's function under § 5(U)). In making a determination of whether the Board of Appeals decision is arbitrary, illegal or capricious, the reviewing court must decide whether the question before the agency was fairly debatable. *Howard County v. Dorsey*, 45 Md.App. 692, 700, 416 A.2d 23 (1980), *rev'd on other grounds*, 292 Md. 351, 438 A.2d 1339 (1982). An issue is fairly debatable if reasonable persons could have reached a different conclusion on the evidence and, if so, a reviewing court may not substitute its judgment for that of the administrative agency. *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372 (1969). The fairly debatable test is analogous to the clearly erroneous standard under Rule 8–131(c) and a decision is fairly debatable if it is supported by substantial evidence on the record taken as a whole. *Dorsey*, 45 Md.App. at 701, 416 A.2d 23, quoting *Sedney v. Lloyd*, 44 Md.App. 633, 637, 410 A.2d 616 (1980).

A reviewing court may not, however, uphold an agency's decision if a record of the facts on which the agency acted or a statement of reasons for its action is lacking. *Board of County Comm'rs for Prince George's County v. Ziegler*, 244 Md. 224, 229, 223 A.2d 255 (1966). Without this reasoned analysis, a reviewing court cannot determine the basis of the agency's action. If the agency fails to meet this requirement, the agency's decision may be deemed arbitrary. *Baltimore Gas & Electric Co. v.*

*Heintz,* 760 F.2d 1408, 1419 (4th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985). In such an instance, the case should be remanded for the purpose of having the deficiency supplied. *Ziegler,* 244 Md. at 229, 223 A.2d 255.

■ Accordingly, the circuit court's role in the instant case was to decide whether the Board of Appeals decision was arbitrary, illegal or capricious. This review must be limited to a determination based on the record—in this case, the record from the Planning Board.[11] *Chertkof v. Department of Natural Resources,* 43 Md.App. 10, 17–18, 402 A.2d 1315, *cert. denied,* 286 Md. 745 (1979).

### —Court of Special Appeals—

■ In this appeal, the role of this court is essentially to repeat the task of the circuit court; that is, to be certain the circuit court did not err in its review. *Howard County v. Davidsonville Area Civic & Potomac River Ass'ns, Inc.,* 72 Md.App. 19, 35, 527 A.2d 772, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987). *See also Gowl v. Atlantic Richfield Co.,* 27 Md.App. 410, 418, 341 A.2d 832 (1975).

### —Board of Appeals—

■ The Howard County Board of Appeals is an administrative body, acting in a quasi-judicial capacity. *Howard County v. Mangione,* 47 Md.App. 350, 353, 423 A.2d 263 (1980). Its scope of review is limited to that prescribed by statute. Under Art. V, § 501(b) of the Howard County Charter (1984), the Board of Appeals may exercise those appellate powers enumerated in Md.Code Ann. Art. 25A, § 5(U) (1957, 1987 Repl.Vol.), in entertaining an appeal from an action of the Planning Board. Section 501(c) of the Charter further provides, in pertinent part:

---

**11.** The Planning Board is an administrative agency. *Howard Research & Dev. Corp. v. Concerned Citizens for the Columbia Concept,* 297 Md. 357, 366, 466 A.2d 31 (1983).

"Those matters coming before the Board pursuant to an appeal from an executive, administrative or adjudicatory order wherein a formal hearing was held and a verbatim record developed shall be reviewed by the Board on the basis of the record before it." [12]

 In an appeal on the record, the petitioner has the burden of establishing that "the action by the administrative agency was clearly erroneous, and/or arbitrary and capricious." Howard County Code § 2.215(c) (1984). Hence, the Board of Appeals standard of review in appeals based on the record is the same as this Court and the circuit court, sitting as appellate courts. In light of these standards, we thus proceed to the facts of the instant case to determine whether any errors occurred at the different levels of review.

## THE CIRCUIT COURT DECISION

Appellants argue that the Board of Appeals properly remanded the matter to the Planning Board since the Planning Board did not apply the proper FDP criteria. In its decision and order, the Planning Board concluded, in pertinent part:

"4. In order for the Planning Board to make a determination on the approval of the location of parcel A–1 as part of the amended Comprehensive Sketch Plan, *the criteria or text material submitted as part of the Plan must be re-examined in light of current circumstances according to the standards for approval of final development plans, pursuant to Section 119C.4. of the Howard County Zoning Regulations.*

"5. The location of parcel A–1, an Employment Center–Commercial Land Use, at its present location off of Martin Road *could have an adverse impact on the adjacent residential uses*, if the most intensive of the

---

**12.** Those matters which come before the Board of Appeals pursuant to its exercise of its original jurisdiction shall be heard *de novo.* § 501(c).

uses presently permitted under the Criteria were to be developed on parcel A–1.

"6. The impact of parcel A–1 on adjacent residential uses may be ameliorated through the elimination of certain more intensive permitted uses in the Criteria for FDP Phase 136." (Emphasis added.)

Appellants contend that, although extensive testimony was taken by the Planning Board regarding the establishment of the Employment Center at the relocated site, completely absent from the Planning Board's conclusions was whether it considered that evidence. As a second basis for their argument that the Planning Board did not apply the proper criteria, appellants contend that the Planning Board could have eliminated the employment center altogether but one cannot tell from its opinion whether the Planning Board ever considered that possibility. As grounds for their contention, appellants direct us to the Planning Board's decision and order, conclusion # 7, which reads:

"7. Complete elimination of an Employment Center–Commercial Land Use at the present location of parcel A–1 would not be in accordance with the Preliminary Development Plan for the area, since there is no remaining location other than Parcel A–1 where a commercial center for the neighborhood may be located."

These conclusions, appellants argue, demonstrates that the Planning Board did not consider the proper criteria in evaluating the relocation of the Employment Center. Hence, appellants urge us to reverse the circuit court's order and affirm the decision of the Board of Appeals.

Appellees, however, claim that the circuit court correctly concluded that the Board of Appeals decision should be reversed. Appellees contend that there was substantial evidence in the record to support the Planning Board's decision and hence the reversal by the Board of Appeals represented a substitution of its judgment for that of the Planning Board. As support for its contention, appellees claim that the Planning Board held two days of public hearings in which numerous proponents and opponents tes-

tified on the issues of compatibility of the proposed use with surrounding properties, traffic problems, parking requirements, odors and noise. Appellees state that the Planning Board reexamined the criteria since conclusions 4 and 5 indicate that the criteria "must be reexamined in light of current circumstances" and the relocation "could have an adverse impact on the adjacent residential uses." This is further demonstrated by conclusion # 6 which states that the impact of the relocation on adjacent residential uses "may be ameliorated through the elimination of certain more intensive permitted uses." The problem with appellees' argument, however, is that, although the Planning Board recognized its task, its decision did not explain how the criteria entered into its conclusion. Thus, we cannot tell from the Planning Board's decision whether it considered the criteria in relocating the center or the possibility of not having a site. Hence, we agree with appellants and hold that the circuit court erred in reversing the Board of Appeals decision and order. We explain further.

In its decision making process, "[t]he planning board shall make decisions with respect to matters submitted to it pursuant to the laws, rules, regulations, and ordinances of the county." Howard County Code § 16.900(j)(2)(i) (1989). Pursuant to the Howard County Administrative Procedure Act, § 2.106 (1970):

"Every decision and order rendered by an agency shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. *The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact as well as the reasons or basis therefor presented on the record,* together with the appropriate rule, order, sanction, relief or denial thereof. In arriving at its decision and order, the vote of each member, together with his reasons therefor, shall be taken and recorded as part of the record of proceedings. A copy of the agency's decision and order and accompanying findings and conclusions shall be delivered or mailed promptly to each party or to his attorney of record." (Emphasis added.)

In *Gough v. Board of Zoning Appeals for Calvert County*, 21 Md.App. 697, 702, 321 A.2d 315 (1974), we stated the reasons why express findings should be made by an administrative agency:

> " 'Given express findings, the court can determine whether the findings are supported by substantial evidence, and whether the findings warrant the decision of the board. If no findings are made, and if the court elects not to remand, its clumsy alternative is to *read* the record, *speculate* upon the portions which probably were believed by the board, *guess* at the conclusions drawn from credited portions, *construct a basis* for decision, and *try to determine* whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record.' " (Emphasis in original.)

Quoting Anderson, *American Law of Zoning* § 16.41.

In an action upon a proposed FDP, the Planning Board must consider, among other things:

> "a. The location and adequacy of all streets and ways, in relation to the highway plans of the County and State.
>
> "b. The location and adequacy of public utility and community facilities, including transportation facilities and recreational uses and school properties, in relation to the density and distribution of population.
>
> "c. The location, extent and potential use of open space in the form of greenbelts, walkways, parkways, park land, etc., as it affects the general amenity of the community.
>
> "d. The impact of the proposed commercial and industrial uses on the residential uses within the NT District or adjacent thereto."

Howard County Zoning Ordinance § 119.C.4.a–d.

In support of its finding that the Board of Appeals conclusions were unsupported by the record, the circuit court stated:

"At the hearings before the Planning Board, evidence was submitted both in favor of and in opposition to the commercial use. Numerous individuals testified in opposition to the use on Martin Road based upon its adverse impact on vicinal properties. In the process of granting the petition to amend the Comprehensive Sketch Plan the Planning Board amended the criteria contained in the Final Development Plan to address certain concerns expressed by protestants at the hearing, and took into consideration those factors set forth in Section 119C.4 of the Howard County Zoning Regulations."

We find it difficult to reconcile the circuit court's conclusion that the Planning Board "took into consideration those factors set forth in Section 119C.4" with the verbal decision of the Planning Board.

Conclusions 4–7 previously set forth express the concerns of the Planning Board but fail to address them. Completely absent in its decision is how the Planning Board examined or reassessed the criteria in considering the impact of the change in location. Although the Planning Board pointed out that evidence was presented that the proposed uses would have an adverse impact on residential areas due to increased traffic, increased odors and lowering of property values, there is no indication elsewhere in its findings of fact or conclusions of law that the Planning Board considered these factors as a basis for its conclusions. Nor is it clear whether the Planning Board even considered the possibility of not having a site. In order for the circuit court to conclude that the Planning Board took the § 119.C.4 factors into consideration, it was required to speculate on which facts the Planning Board relied in support of its determination. This the circuit court need not and must not do.

 Without a record of the facts or the reasons for its action, a reviewing court cannot properly perform its duty of determining whether the action of the Planning Board was arbitrary or capricious. *Ziegler,* 244 Md. at 229, 223 A.2d 255. *See also Hooper v. Mayor of Gaithersburg,*

270 Md. 628, 637, 313 A.2d 491 (1974); *Turner v. Hammond*, 270 Md. 41, 55–56, 310 A.2d 543 (1973); *Valenzia v. Zoning Board of Howard County*, 270 Md. 478, 485–86, 312 A.2d 277 (1973); *Baker v. Board of Trustees of the Employees' Retirement System of the City of Baltimore*, 269 Md. 740, 747, 309 A.2d 768 (1973); *Gough*, 21 Md.App. at 702–04, 321 A.2d 315. Here, the ordinance sets forth criteria which must be considered in order to render the uses of a location compatible with adjacent residential uses. In our review of the Planning Board's decision, we find no such consideration. The Planning Board should have stated the reasons for its actions and included them in the record; this was not done. Hence, the Board of Appeals could not properly perform its duty of determining whether the Planning Board's action was clearly erroneous and/or arbitrary and capricious. Accordingly, the Board of Appeals properly remanded the matter to the Planning Board.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED.

CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE HOWARD COUNTY BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.