712 A.2d 110

John HITER, et al.

v.

HARFORD COUNTY, Maryland, et al.

No. 1217, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 26, 1998.

J. Carroll Holzer (Holzer and Lee, on the brief), Towson, for Appellants.

Nancy L. Giorno, Asst. County Atty., Bel Air, for appellee, Harford County. Albert J. Young (David E. Carey and Brown, Brown and Brown, P.A., on the brief), Bel Air, for appellees, Security and Posner.

Argued before HARRELL and THIEME, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

HARRELL, Judge.

On 4 August 1997, this Court granted appellants', John and Grace Hiter, and appellees', Security Management Corpora-

tion ("SMC"), Victor Posner, and Harford County, Maryland, Joint Motion to Consolidate Case Numbers 3787–8–137 (Case I) and 3817–8–167 (Case II) for appellate consideration. Both cases arise from various actions taken by elements of the Harford County government in the course of reviewing and approving land development applications for a proposed residential project currently known as "Hollywoods." The Hiters are property owners in Harford County and reside adjacent to the proposed project. Appellees SMC and Victor Posner are the owners and developers of Hollywoods.

Specifically, Case I arises from a letter that the Hiters, on 4 October 1994, sent to William G. Carroll, the then-Director of Planning for the Harford County Department of Zoning and Planning ("DPZ"). In that letter, the Hiters appear to have argued that the DPZ should not approve a revised concept plan or subdivision plats proposed by appellee SMC for Hollywoods. In addition, the Hiters asked Mr. Carroll to render an opinion regarding several issues related to the project. Approximately eighteen months later, on 5 April 1996, after the DPZ approved an amended concept plan and a preliminary subdivision plan for Phase I of Hollywoods, the current Director of DPZ, Arden Case Holdredge, sent a copy of the preliminary subdivision plan approval letter to the Hiters' attorney.

On 22 April 1996, the Hiters filed an application with the Harford County Board of Appeals ("Board of Appeals"),[1] in which they stated that they were appealing from "an administrative decision" of the Zoning Administrator. The "administrative decision" to which the Hiters referred was the 5 April 1996 letter they received from Ms. Holdredge, which they considered to be a direct (albeit tardy) response to the request for certain opinions contained in their 1994 letter to Ms.

---

1. Pursuant to section 267–9A of the Harford County Code (1995), the elected County Council of Harford County, Maryland sits as the Board of Appeals as well.

Holdredge's predecessor. Appellees, on 24 June 1996, filed a Motion to Dismiss the Hiters' appeal. Following a hearing on the Motion to Dismiss before a Zoning Hearing Examiner on 17 July 1996, the Hearing Examiner concluded that the 5 April 1996 letter, in and of itself, did not constitute an appealable decision of the County's Zoning Administrator. Therefore, the Hearing Examiner recommended that the case be dismissed. On 7 January 1997, after considering the record made before the Hearing Examiner and the argument of counsel, the Board of Appeals adopted and ratified the Hearing Examiner's recommendation to dismiss the Hiters' appeal. On 24 January 1997, the Hiters filed, in the Circuit Court for Harford County, a Petition for Judicial Review of the Board of Appeals's decision.

Case II arises from the Hiters' filing, on 11 April 1997, in the Circuit Court for Harford County, of a Petition for Judicial Review and/or Declaratory Relief, challenging Harford County's issuance, on 13 March 1997, of a stormwater management permit and a grading permit to SMC for Phase I of Hollywoods. On 28 April 1997, appellees filed individual Motions to Dismiss the Hiters' petition.

On 16 May 1997, the Circuit Court for Harford County (Whitfill, J.) held a joint hearing on Case I and Case II. During the course of the hearing, the parties agreed, with respect to Case I, to submit on their written memoranda. After hearing argument on Case II, the circuit court, on 27 May 1997, filed a sixteen-page memorandum opinion addressing both cases, and on 4 June 1997, filed an order in conformance with that memorandum opinion. With respect to Case I, the court affirmed the decision of the Board of Appeals to dismiss the Hiters' appeal for lack of an appealable issue, and with respect to Case II, the court dismissed both the petition for judicial review and the petition for declaratory relief.

On 18 June 1997, the Hiters filed this timely appeal of both matters, and on 12 August 1997, this Court granted the parties' Joint Motion to Consolidate Case I and Case II on appeal. The Hiters raise the following two issues for our consideration, which we have rephrased:

1. Whether the circuit court erred in affirming the Harford County Board of Appeals's decision to grant appellees' motion to dismiss the Hiters' appeal in Case I.

2. Whether the circuit court erred in granting appellees' motion to dismiss the Hiters' Petition for Judicial Review and/or Declaratory Relief in Case II.

Because we find no reversible error, we affirm the circuit court's judgment in both Case I and Case II.

## FACTS

### Case No. 3787-8-137 (Case I)

On 13 April 1981, the Zoning Hearing Examiner for Harford County held a hearing regarding SMC's petition to rezone three hundred and thirteen acres ("the property") located between Maryland Route 7 and Interstate Route I-95, from an agricultural (A-1) classification to a multifamily residential (R-3) classification. The Hearing Examiner also considered SMC's request for Community Development Project approval, which entailed adoption of a concept plan of development for the overall Hollywoods project.[2] In a decision issued on 13 October 1981, the Hearing Examiner recommended the approval of both the rezoning and the Community Develop-

---

2. Our reading of the parties' briefs and the joint record extract leaves us puzzled on the matter of whether a request for approval of a Community Development Project designation, with attendant concept site plan, was, or is, governed by the zoning provisions of the Harford County Code or some other enactment. The 1981 decision of the Zoning Hearing Examiner refers to the provisions of "Section 10.03 and 17.3" in this regard, but the decision does not elaborate further. In certain documents in the joint record extract, e.g., the 6 October 1995 approval letter of an amended concept plan for Hollywoods, we discovered language that seems to indicate that the "Zoning Code" ordinarily governs Community Development Project designations and related concept plan requirements; however, this language is far from definitive or conclusory. The parties have not provided any legislative references (or argument) as to where in the Harford County Code or other legislative enactments (whether prevailing in 1981, 1994, or at present) one might discover the provisions governing such matters. Although this strikes us as potentially a fairly important area of inquiry,

ment Project/concept plan, subject to a number of conditions. In the course of his decision, the Hearing Examiner noted that then-appellant Grace Terry (now appellant Grace Hiter) testified in opposition to the proposed development at the 13 April 1981 hearing. The Hearing Examiner stated: "Mrs. Grace Terry testified that she felt that the proposed development would have a detrimental effect on her property and her peace and quiet enjoyment of the property."

Also on 13 October 1981, Angela Markowski, the Secretary of the County Council of Harford County, issued a Notification of the Decision of the Zoning Hearing Examiner. The notification indicated that the Hearing Examiner's decision would become final on 2 November 1981, twenty calendar days after the decision, unless, before time expires, the applicant, the People's Counsel, or an aggrieved party files a request for final argument before the County Council/Board of Appeals. We can find no indication in the record that any such request for final argument was made, and therefore, we consider the decision of the Hearing Examiner as final.

On 4 October 1994, the Hiters, through their then-attorney, sent a letter to William G. Carroll, facially addressed to him in his capacity as the Director of the DPZ,[3] in which they contended that the DPZ should not approve the proposed subdivision of the property [4] for the following reasons:

1. The subdivision fails to comply with the Harford County Tree Bill adopted by the Harford County Council on 15

---

because the parties have shown scant interest in its exploration, we have no incentive to supply research and analysis for them.

**3.** According to the Harford County Code, the Director of the DPZ also serves as the Zoning Administrator. *See* Harford County Code § 267–7A. We will review the difference in the duties of the two positions *infra*.

**4.** In the 4 October 1994 letter, the Hiters referred to the name of the proposed project as "Greenleaf" and noted that it formerly was called "Hollywoods." Subsequent documents filed in this matter refer to the project as again claiming the name "Hollywoods." For purposes of this appeal, we will refer generally to the project as either the "project," the "property," or "Hollywoods."

April 1993. Since [the subdivision] did not have an approved concept plan prior to the adoption of the Tree Bill, it is not exempt from its provisions.

2. Substantial change—There are substantial changes in the proposed concept plan of [the subdivision] from the Concept Plan submitted to the Harford County Hearing Examiner in 1981. These substantial changes would require that the applicant/owner now reapply [to the] Board of Appeals for modification approval, or comply with the planned unit development section of the Harford County Code.

3. The proposed concept plan fails to comply with the conditions set forth in the 1981 hearing examiner's report.

4. Growth Management—Public Facilities Bill 94–36 exempts a preliminary plan or site plan approved before the effective date of Council Bill 93–23. The Developer has abandoned the site plan submitted with the application in 1981. The Department should consider any plan which does not conform to the 1981 plan as a newly submitted plat.

The Hiters then asked Mr. Carroll to render an opinion regarding the following:

1. The applicability of the Tree Bill to the proposed subdivision.

2. The validity of the 1981 decision in light of the fact that the Developer's current proposed plan does not conform to the 1981 plan submitted at the time of the hearing.

3. The applicability of Bill 94–36 to the proposed subdivision. The extent to which the Department of Planning & Zoning will enforce the conditions set forth in the 1981 Hearing Examiner's opinion.

4. Whether the 1981 approval is still valid and, if so, is its validity limited to the site plan submitted at the time of the hearing.

Based on our review of the joint record extract, neither the DPZ Director nor the Zoning Administrator offered a timely

acknowledgment (written or otherwise) or response to the Hiters' attorney's letter. Whether there ever was a response is a central question in this appeal.

Over one year later, on 1 December 1995, SMC submitted a preliminary plan of subdivision for Phase I of the property to the Harford County DPZ, which submission SMC subsequently revised on 4 March 1996. Phase I, as described in the preliminary plan of subdivision, encompassed seventy-nine of the proposed three hundred and thirteen acres, and included plans for one hundred and sixty-nine lots for townhouses. On 4 April 1996, the "new" Director of the DPZ, Arden Case Holdredge, and the DPZ's Chief of Current Planning, Anthony S. McClune, issued to SMC an approval of the amended preliminary plan of subdivision.[5]

On 5 April 1996, Ms. Holdredge sent the following letter, which we reproduce in its entirety, to the Hiters' attorney.

April 5, 1996

Re: Hollywoods Preliminary Plan

---

**5.** The record suggests that the DPZ notified the Hiters of SMC's filing of a preliminary subdivision plan for Phase I of the Hollywoods subdivision. *See* Harford County Subdivision Regulations § 5.03(c), (d), (e) (1997) (setting forth the various public notification requirements the DPZ must follow prior to acting on a preliminary subdivision plan). The record contains a letter, dated 2 January 1996, from Richard D. Klein, president of Community & Environmental Defense Services, to Ed Steere of the DPZ, stating that the Hiters retained him to assist in resolving their concerns about the environmental effects of the proposed subdivision plan. This letter specifically references the Preliminary Plan of subdivision for Phase I of Hollywoods.

The record additionally reflects that the Hiters, through counsel, participated in the Development Advisory Committee ("DAC") meeting on 3 January 1996 regarding the Phase I subdivision plan. The minutes from the DAC meeting indicate that the Hiters' counsel was present at the meeting, and that Mr. Klein actively participated in the meeting. It would appear then, that through counsel and their consultant, the Hiters were parties to the subdivision review process conducted by the DPZ for Phase I of Hollywoods. Although the joint record extract and the parties' briefs do not state conclusively that the Hiters failed to note an appeal of the approval of the preliminary plan of subdivision for Phase I, a comment in appellees' brief, at page 16, suggests that to be the case. The Hiters indicate nothing to the contrary.

Dear [ ]:

Attached please find a copy of the preliminary plan approval letter for Section I of the Hollywoods development located on Philadelphia Road.

If you have any questions, please contact Nancy Giorno at the Department of Law (410) 638-3205.

/s/ Sincerely,

/s/ Arden Case Holdredge
/s/ Director of Planning and Zoning

Ms. Holdredge attached to the letter a copy of the 4 April 1996 preliminary subdivision plan approval described above. The Hiters, in their appellate brief, acknowledge that there had been no correspondence between their attorney and the DPZ or the Zoning Administrator between 4 October 1994 and 5 April 1996.

On 22 April 1996, the Hiters initiated this action by filing an application with the Board of Appeals, in which they stated that they "[a]ppealed because ... of an Administrative Decision pursuant to Section 267-7E [6] of the Harford County Code which approved an Amended Preliminary Plan in an R3 District." In their application, the Hiters noted that the 4 April 1996 decision to approve the plan "is the response to [the Hiters'] request for [an] opinion dated October 4, 1994 regarding review of this subdivision." [7] In the justification section of their application, the Hiters reiterated, in twelve points, the issues concerning the subdivision that they raised in their 4 October 1994 letter.

---

**6.** Section 267-7E of the Harford County Code provides: "Any decision of the Zoning Administrator shall be in writing and shall be subject to appeal to the Board by any aggrieved person within twenty (20) days of the date of the decision."

**7.** We note that, as of 4 October 1994, SMC had not filed the preliminary plan of subdivision for Phase I of Hollywoods that ultimately was approved. According to the joint record extract, SMC filed the Phase I plan on 1 December 1995 and amended it on 4 March 1996. Thus, it is questionable, in the extreme, that the Hiters' attorney's letter of 4 October 1994 was referring literally to the preliminary plan of subdivision actually submitted thereafter.

By letter dated 30 April 1996 and received 2 May 1996 by the DPZ, Phyllis G. Brock, the Director of Planning and Community Development for the City of Aberdeen, Maryland, stated that she had reviewed the Hiters' appeal and that she agreed that the Hearing Examiner should review the approved preliminary plan of subdivision and consider the following:

— conditions that were attached to the original approval of the subdivision and application of those conditions to the revised subdivision;[8]

— any changes that have occurred in the neighborhood and our adjoining municipality concerning the impact of traffic, water and sewer facilities, and schools.

On 24 June 1996, SMC filed a Motion to Dismiss the Hiters' request for an appeal of an administrative decision. SMC contended that the Board of Appeals lacked jurisdiction to consider the matter because (1) an amended preliminary plan of subdivision approval is not an act of the Zoning Administrator, and as such, is not appealable; (2) the DPZ preliminary plan of subdivision approval is not an "interpretation upon written request of an interested person;" and (3) the Hiters are not "aggrieved" parties as described in section 267–7E of the Harford County Code. In July 1996,[9] appellee Harford

---

**8.** As we understand the approval process from our perusal of the joint record extract, this language in Ms. Brock's letter cannot be construed to mean that a preliminary plan of subdivision for any part of Hollywoods was approved before the Phase I approval on 4 April 1996. Her reference "to the original approval of the subdivision" appears to be to the 1981 approval of the zoning and the concept plan as part of the process of receiving the Community Development Project designation. Thus, as we appreciate it, Ms. Brock's point was that the 1996 preliminary plan of subdivision, encompassing only Phase I of Hollywoods, may be inconsistent with the 1981 zoning and concept plan approval. Given the date of her letter and the date of approval of an amended concept plan for Hollywoods, it is also possible that Mr. Brock may have had the latter matter in mind as well.

**9.** The date stamps utilized by the Harford County Council indicate only the month and the year that they received the document. Therefore, we

County, Maryland, through the DPZ, joined in SMC's motion to dismiss. Also in July 1996, the Hiters filed a memorandum with the Board of Appeals responding to SMC's motion to dismiss.

On 10 July 1996, the DPZ submitted to the Hearing Examiner a Staff Report regarding the Hiters' application. The Staff Report was signed by Mr. McClune, in his capacity as Chief of the Current Planning Division, and Ms. Holdredge, in her capacity as Director of the DPZ. In the transmittal letter Mr. McClune mailed to the Hiters' attorney, Mr. McClune stated:

> Our Staff Report is furnished to the Hearing Examiner to provide general information concerning the request, the subject property, and background data. The report as well as our Department's recommendation, is submitted for information purposes only, as any finding in the Board of Appeals case must necessarily be the decision of the Zoning Hearing Examiner alone.

In the summary section contained in the Staff Report, it was stated that "[t]he Applicants are appealing the Zoning Administrator's decision to approve an amended preliminary plan for Hollywoods, Phase I, Areas V and VI. . . . This letter [the 5 April 1995 letter and attachment] was in response to a request for an opinion dated October 4, 1994, regarding review of this subdivision." The Staff Report then set forth the DPZ's position regarding the twelve points the Hiters enumerated in their 22 April 1996 application to the Board of Appeals.

On 17 July 1996, the Zoning Hearing Examiner [10] (William

---

are unable to indicate the specific day on which certain documents were submitted.

10. As we noted previously, *see supra* n. 1, Section 267–9A of the Harford County Code designates the County Council as the Board of Appeals. The Board of Appeals "may employ Hearing Examiners to hear zoning cases within the jurisdiction of the Board. . . . The Hearing Examiner shall have the authority, duty and responsibility to render recommendations in all case, subject to final approval of the Board." § 267–9E. Furthermore, "[t]he recommendation of the Hearing Examiner shall be deemed adopted by the Board, unless final argument is

F. Casey) held a hearing on SMC's motion to dismiss.[11] During the course of this hearing, the Hearing Examiner heard arguments from counsel for both parties, but did not receive evidence.[12] On 31 July 1996 the Hearing Examiner issued a written decision recommending that the Board of Appeals grant SMC's motion to dismiss. The Hearing Examiner stated: "The single issue before the Hearing Examiner is whether the letter dated April 5, 1996 constitutes an appealable decision of the Zoning Administrator. The Hearing Examiner concludes that it does not." The Hearing Examiner further stated:

> The Hearing Examiner concludes first, that the mailing of a [notice of subdivision] plat [approval] to the Applicants [the Hiters] does not, under the circumstances of this case render such a mailing an appealable interpretation or decision by the Zoning Administrator pursuant to Section 267–7(E) of the Code; secondly, that the appeal of a preliminary

---

requested within twenty (20) days from the date of the written recommendation." § 267–9F. Any Board member, the applicant, the People's Counsel, or an aggrieved person who registered as a party to the proceedings before the Hearing Examiner, may request a final argument before the Board, § 267–9G, and "[d]ecisions of the Board shall be subject to appeal in accordance with the Charter." § 267–9H.

11. Apparently, the parties agreed to bifurcate the proceedings and therefore the Zoning Hearing Examiner considered only the motion to dismiss in the 17 July 1996 hearing.

12. We note that the record contains two documents that may have been before the Hearing Examiner at the time of the 17 July 1996 hearing: First, the record contains the affidavit of Arden Case Holdredge, dated 17 July 1996, in which she stated, among other things, that the letter she sent to the Hiters' counsel in April 1996, was merely a courtesy transmittal letter enclosing a copy of the preliminary subdivision plan approval letter. She also noted that she specifically intended not to render a decision or interpretation as Zoning Administrator in response to the Hiters' 4 October 1994 letter, and that in fact, she signed the April 1996 letter as the Director of Planning and Zoning, and not as Zoning Administrator.

Second, the record contains a Memorandum, dated 25 June 1996, from Edward M. Steere, a planner with the DPZ, to Anthony McClune, the Chief of Current Planning, in which Mr. Steere addressed each of the twelve points of justification the Hiters set forth in their application to the Board of Appeals.

plan approval is premature in any forum; thirdly, that the proper process of appeal in instances related to plan approval process is governed by Regulation 9.01 of the Subdivision Regulations which, in the opinion of the Hearing Examiner is the exclusive avenue of appeal in such cases.

The Acting Secretary of the County Council, James D. Vannoy, notified the parties of the Hearing Examiner's decision and stated that this decision would become final on 20 August 1996, twenty calendar days after the date of the decision, unless a written request for final argument is filed with the Board of Appeals.

On 14 August 1996, the Hiters entered an appeal to the Board of Appeals from the 31 July 1996 decision of the Hearing Examiner. On 7 January 1997, after considering final argument from the parties, the Board of Appeals adopted and ratified the Hearing Examiner's 31 July 1996 recommendation, and as such, dismissed the Hiters' appeal.

The Hiters, on 24 January 1997, filed in the Circuit Court for Harford County a Petition for Judicial Review of the Board of Appeals's decision. On 31 January 1997, appellee Harford County, Maryland, through the DPZ, filed its intention to participate in the Hiters' action for judicial review, and on 10 February 1997, SMC filed its intention to participate in the action for judicial review.

On 24 February 1994, the Hiters filed a memorandum with the circuit court arguing that they have a legal right both to request an interpretation of the Zoning Administrator and that, in the event they receive an adverse decision, they have the right to appeal to the Board of Appeals. On this basis, the Hiters asked the circuit court to vacate the 7 January 1997 decision of the Board of Appeals and to remand this matter to the Zoning Hearing Examiner to take testimony on the substantive issues that were the subject of the original appeal. On 31 March 1997, SMC filed its response to the Hiters' memorandum, which appellee Harford County joined in and incorporated on 2 April 1997.

The Circuit Court for Harford County (Whitfill, J.), on 16 May 1997, held a hearing in this matter (Case I) and in Case II.[13] During the course of that hearing, the court granted a Motion to Amend to add appellee Victor Posner as a coparty.[14] The parties agreed, with regard to Case I, to submit on their previously filed memoranda. After hearing arguments on Case II, Judge Whitfill held the matter *sub curia.*

On 27 May 1997, Judge Whitfill filed a sixteen-page Memorandum Opinion addressing both Case I and Case II. With respect to Case I, the court set forth detailed reasons for its decision to affirm the 7 January 1997 decision of the Board of Appeals.[15] In sum, the court stated:

The decision of the Board of Appeals must be affirmed on the basis that:

1. The letter of October 4, 1995 was directed to the Director of Planning [and Zoning] in his capacity to review subdivision plans and not in his capacity as Zoning Administrator.

2. The letter of the Director of Planning [and Zoning] dated April 5, 1996 was a mere transmittal of the preliminary plan approval and was not a response to the October 4, 1994 letter.

3. The approval of the preliminary plan in this case was an act of the Director of Planning [and Zoning] and was not a function that involved the Zoning Administrator.

4. Section 267–7 only provides for appeals from the decisions of the Zoning Administrator in the enforcement of

---

13. We separately address the factual and procedural history of Case II below.

14. At the beginning of the hearing, Judge Whitfill disclosed his prior legal representation of SMC in unrelated matters when he was in private practice, and the Hiters moved for recusal. The court referred the motion for recusal to Judge Marshall, who, after disclosing his more recent prior legal representation of SMC, recused himself. Ultimately, Judge Carr heard and denied the motion for recusal. The Hiters do not pursue this aspect on appeal.

15. We discuss the court's reasoning in greater detail below.

Part One of the zoning code and does not grant the Zoning Administrator the power to review or render advisory opinions on subdivision or site plans that are in the process of being reviewed by the Director of Planning [and Zoning].

On 4 June 1997, the court filed an Order of Court in conformance with its Memorandum Opinion. On 18 June 1997, the Hiters noted an appeal of the Circuit Court's rulings in both Case I and II, and on 28 July 1997, the Hiters and appellees filed with this Court a Joint Motion to Consolidate Cases I and II. This Court granted the Motion to Consolidate on 12 August 1997.

### Case No. 3817-8-167 (Case II)

On 13 March 1997, the Harford County Director of Public Works, William T. Baker, Jr., issued Stormwater Management Permit Number 96–90302–001 to SMC for Phase I, Ponds 1, 2, and 3 of the Hollywoods (the same Phase I that was the subject of the approved preliminary plan of subdivision). Also on 13 March 1997, Mr. Baker issued Grading Permit Number 96–51016–001 to SMC for Phase I of the Hollywoods subdivision.

On 11 April 1997, the Hiters filed, in the Circuit Court for Harford County, a Petition for Judicial Review and/or Declaratory Relief, challenging Harford County's 13 March 1997 decision to approve the issuance of the Phase I stormwater management and grading permits to SMC for Hollywoods. Appellees SMC and Harford County, on 28 April 1997, filed two separate Motions to Dismiss the Hiters' petition, both claiming that the circuit court lacked the jurisdiction to consider such a petition.

As discussed above, on 16 May 1997, the Circuit Court for Harford County held a hearing in Cases I and II. The court heard arguments from the Hiters and appellees regarding appellees' motion to dismiss the Hiters' petition, and on 27 May 1997, the court issued a Memorandum Opinion setting forth its basis for dismissing the Hiters' petition. In sum,

with respect to the petition for judicial review, the court concluded that

[t]he actual issuance of the permits in question was by the Department of Public Works and no authority has been cited to us that granted a right of appeal from an action of the Director of Public Works to the Circuit Court ... [and][t]herefore, the petition for judicial review must be denied.

With respect to the petition for declaratory relief, the court concluded that

[t]he attempt to join a complaint for declaratory relief with a petition for judicial review is an inappropriate joinder ... [because] [t]he powers of the court granted under the declaratory judgment act are a different set of powers than that are established under the various statutes allowing appeals to the Circuit Court from administrative bodies.

On 4 June 1997, the court issued a written order in conformance with its Memorandum Opinion. The Hiters noted an appeal on 18 June 1997, and this Court granted the parties' Joint Motion to Consolidate Case I and Case II on 12 August 1997.

## DISCUSSION

### Case I

#### A.

We initially note the relevant standard of review. *See Mortimer v. Howard Research & Dev. Corp.*, 83 Md.App. 432, 440–43, 575 A.2d 750 (1990). Article 25A, section 5(U) of the Maryland Code (1957, 1998 Repl.Vol.) sets forth the roles of the circuit court and of ourselves in reviewing a Board of Appeals decision in a charter county such as Harford County. Section 5(U) provides in pertinent part:

Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, *or if such decision is not in accor-*

*dance with law,* to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive.

(Emphasis added). The standard of review therefore is limited to whether the Board of Appeals's decision is "in accordance with the law." *See Mortimer,* 83 Md.App. at 441, 575 A.2d 750. This Court in *Mortimer* further stated:

The Court of Appeals has stated that the court may set aside, as "not in accordance with law," a decision of the Board of Appeals which is arbitrary, illegal or capricious. In making a determination of whether the Board of Appeals decision is arbitrary, illegal or capricious, the reviewing court must decide whether the question before the agency was fairly debatable. An issue is fairly debatable if reasonable persons could have reached a different conclusion on the evidence and, if so, a reviewing court may not substitute its judgment for that of the administrative agency.

*Id.* at 441, 575 A.2d 750 (citation omitted). In addition to the foregoing, a court " 'is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law.' " *Younkers v. Prince George's County,* 333 Md. 14, 19, 633 A.2d 861 (1993) (quoting *People's Counsel v. Maryland Marine,* 316 Md. 491, 496–97, 560 A.2d 32 (1989)). Applying these principles, we consider whether the circuit court correctly concluded that the Board of Appeals lacked jurisdiction to consider the Hiters' appeal. *See Anne Arundel County v.2020C West Street, Inc.,* 104 Md.App. 320, 326, 656 A.2d 341 (1995) ("On appeal to this Court, we must be certain that the circuit court did not err in its review.").

### B.

In Case I, we consider whether the circuit court erred in affirming the Board of Appeals's decision to dismiss the Hiters' appeal. The Board of Appeals and the circuit court concluded that the letter that Ms. Holdredge, acting in her

capacity as Director of the DPZ, mailed to the Hiters on 5 April 1996 did not constitute an appealable interpretation or decision of the Zoning Administrator pursuant to section 267–7E of the Harford County Code (1995) ("the Code"), and therefore, that the Board of Appeals had no statutory authority to consider the Hiters' appeal. The Hiters argue that section 267–7E of the Code did provide them with the legal right to appeal from the 5 April 1996 letter because that letter constituted an appealable decision of the Zoning Administrator, Ms. Holdredge, in response to their 4 October 1994 request for an interpretation of the application of the Harford County zoning laws to the property at issue.

We first set forth the relevant Harford County Code provisions. Section 267–7A of the Code establishes the office of Zoning Administrator and provides in pertinent part: "The Director of Planning shall be the Zoning Administrator." Section 267–7B sets forth the powers and duties of the Zoning Administrator:

B.  The Zoning Administrator or his duly authorized designee shall be vested and charged with the power and duty to:

    (1)  Receive and review complete applications under the provisions of this Part 1[16] for transmittal and recommendation to the Board.

    (2)  Issue zoning certificates pursuant to the provisions of this Part 1 and suspend or revoke any zoning certificate upon violation of any of the provisions of this Part 1 or any approvals granted hereunder subject to the requirements of this Part 1.

---

**16.**  "Part 1" sets forth the Standards provisions of the Zoning section of the Harford County Code. Part 1 includes the following articles: "General Provisions;" "Administration and Enforcement;" "Districts Established; Boundaries;" "Nonconforming Lots, Buildings, Structures and Uses;" "Supplementary Regulations;" "Forest and Tree Conservation;" "District Regulations;" "Design Standards for Special Developments;" "Special Exceptions;" and "Applicability of Provisions." Section 267–7 is encompassed within the "Administration and Enforcement" article of Part 1.

(3) Conduct inspections and surveys to determine whether a violation of this Part 1 exists.

(4) Seek criminal or civil enforcement for any provision of this Part 1 and take any action on behalf of the county, either at law or in equity, to prevent or abate any violation or potential violation of this Part 1.

(5) [Amended by Bill No. 94–64][17] Render interpretations upon written request of an interested person whose property may be affected as to the applicability of this Part 1 to particular uses and its application to the factual circumstances presented.

(a) Within 14 calendar days after a request for an interpretation is received, the Zoning Administrator shall:

■ Ensure that notice of the request is sent by first class mail to each owner of property which adjoins the property involved;

■ Ensure that the property that is the subject of the request is posted conspicuously with a notice stating the Department's telephone number, that the request has been received, the date by which the interpretation must be issued, and that further information may be obtained from the Department.

(b) The Zoning Administrator shall issue an interpretation within 60 calendar days after receiving the request for the interpretation. Within 5 calendar days after issuing the interpretation, the Zoning Administrator shall send a copy of the interpretation to each owner of property which adjoins the property involved and shall include a notice that the interpretation may be appealed within Subsection E of this section.

---

17. Bill Number 94–64, which added subsections (a)[1], [2] and (b) to section 267–7B (5), took effect on 14 November 1994, one month after the Hiters sent their letter to then-Director of DPZ Carroll.

(6) Design and distribute applications and forms required by this Part 1, requesting information which is pertinent to the requested approval.

(7) Perform such duties as are necessary for the proper enforcement and administration of this Part 1.

Lastly, section 267–7E provides for appellate review of the Zoning Administrator's decisions:

E. Any decision of the Zoning Administrator shall be in writing and shall be subject to appeal to the Board by any aggrieved person within twenty (20) days of the date of the decision.

Because we agree that the 5 April 1996 letter does not constitute "a decision of the Zoning Administrator" pursuant to section 267–7E, we affirm the circuit court's judgment affirming the Board of Appeals's decision to dismiss the Hiters' appeal. We conclude as such for two reasons: first, Ms. Holdredge, when sending the 5 April 1996 letter, did not act pursuant to her powers as Zoning Administrator; and second, the 5 April 1996 letter did not constitute a "decision" or "interpretation" of Harford County zoning law.

1.

First, Ms. Holdredge, when sending the 5 April 1996 letter to the Hiters, did not act in her capacity as Zoning Administrator. Section 267–7A establishes that the Director of Zoning and Planning shall serve as Zoning Administrator, but this provision does not establish that the Director always acts in both capacities. To the contrary, section 267–7B sets forth the specific duties and powers of the Zoning Administrator. Thus, in order for Ms. Holdredge to have acted in her capacity as Zoning Administrator in this case, she needed to have acted pursuant to one of those duties or powers. The Hiters contend that Ms. Holdredge, in sending the 5 April 1996 letter, acted pursuant to her section 267–7B(5) power to "render interpretations upon [the] written request of an interested person." They argue that the letter constituted a

response to their 4 October 1994 request for an opinion on certain issues related to the property.

The Hiters argue that they were, and are, not appealing the approval of the preliminary subdivision plan for Phase I of Hollywoods, yet a great portion of their 4 October 1994 letter focused on reasons the Department of Planning and Zoning should not approve the proposed subdivision.[18]  In their letter, the Hiters first contended that the DPZ should not approve the proposed subdivision for four reasons:  (1) the subdivision failed to comply with the Harford County Tree Bill;  (2) the subdivision's concept plan substantially changed between 1981 and 1994;  (3) the proposed concept plan failed to comply with conditions set forth in the 1981 hearing examiner's report; and (4) the developer abandoned the concept site plan submitted with its original application in 1981, therefore the DPZ should consider any plan not conforming to the 1981 plan as a newly submitted plat, subject to any new legal requirements enacted in the interim and subject to running the gauntlet of

18.  As we noted *supra* on pages 257–59, SMC's initial preliminary plan of subdivision for Hollywoods, encompassing only Phase I of the proposed development, apparently was not filed with the DPZ until after the date of the Hiters' attorney's letter to Mr. Carroll.  This presents a potential ambiguity in a number of the references in the letter critiquing the "proposed subdivision," "the proposed subdivision plat," and "the subdivision."  Although it is rank speculation on our part, based on the joint record extract references provided by the parties in their briefs, it seems likely that the Hiters' then-attorney either was utilizing the word "subdivision" as a nonlegal, marketing reference (referring to the overall proposal to develop a residential community to be known as Greenleaf/Hollywoods), or he may have been referring to unfiled precursors to the as-filed preliminary plan of subdivision which, because they were submitted to the DPZ for some type of prefiling review, were in the public domain and discovered by the Hiters (perhaps even provided to the Hiters or their attorney by SMC in a "good neighborly" gesture not unheard of among developers who sometimes try to pacify opposition through small acts of kindness and generosity).  The attorney who authored the October 1994 letter (not the same counsel representing the Hiters in this appeal) also alluded to a new concept plan ("Series III, the Concept Plan for Greenleaf") proposed by SMC, that differed from the concept plan approved in 1981.  As the record extract informs us only that the DPZ approved an Amended Concept Plan C3/92–4 for Hollywoods on or

review anew. Second, the Hiters asked Mr. Carroll to render an opinion on four issues; these issues, however, also all focused on the approvability of either a preliminary subdivision plan or a revised concept [site] plan: (1) the applicability of the Tree Bill to the development of the property; (2) the ability of a revised concept plan to comply with the conditions expressed in the Hearing Examiner's 1981 decision; (3) the applicability of Bill 94–36 (imposing public facilities adequacy requirements) to the proposed subdivision; and (4) the continuing validity *vel non* of the 1981 approval.

The Harford County ordinance governing the subdivision plan approval process is distinct from the law governing the zoning process. Sections V and VI, Harford County Subdivision Regulations (1997) ("The Preliminary Subdivision Plan and/or Site Plan" and "The Final Subdivision Plan"), govern the subdivision plan approval process, whereas section 267 of the Harford County Code (1995) governs zoning. The Code, in section 267–3A, sets forth the purpose of the zoning provisions:

A. The purpose of this Part 1 [Zoning Standards] is to promote the health, safety, morals, and general welfare of the community by regulating the height, number of stories, size of buildings and other structures, percentage of lot that may be occupied, the size of lots, yards and other open spaces and the location and use of buildings, structures and land for business, industrial, residential and other purposes. This Part 1 is enacted to support the Master Plan and designed to control traffic congestion in public roads; to provide adequate light and air; to promote the conservation of natural resources, including the preservation of productive agricultural land; to facilitate the construction of housing of different types to meet the needs of the County's present and future residents; to prevent environmental pollution; to avoid undue concentration of population and congestion; to facilitate the adequate provision of transportation, water, sewerage, schools, recreation, parks, and other public facilities; to give reasonable

---

about 6 October 1995, we shall not ponder further on this point. *See supra* n. 2.

consideration, among other things, to the character of each district and to its suitability for particular uses, with a view to conserving the value of buildings and encouraging the orderly development and the most appropriate use of land throughout the county; to secure safety from fire, panic and other danger; and to conserve the value of property.

The Code delegates enforcement of the zoning provisions to the Zoning Administrator. *See* § 267–7B(4) (zoning administrator charged with the duty of seeking criminal or civil enforcement for any provision of Part 1 and for taking any action to prevent any violation or potential violation of Part 1). In addition, the Code distinguishes between the zoning provisions and the subdivision regulations: Section 267–6C of the zoning provisions provides: "Notwithstanding the provisions of this Part 1 [Zoning Standards], any development shall be subject to the provisions of the Subdivision Regulations, and any other activity requiring the issuance of a permit, license, grant or approval shall be subject to the applicable law."

In contrast, the subdivision regulations specifically govern, among other things, the preliminary subdivision plan approval process:

5.01 Submission Procedure. The preliminary plan and/or site plan shall be submitted to the Department of Planning and Zoning for all proposed subdivisions. The preliminary plan and or site plan shall be complete and shall show the information required in Section 5.02.

5.03(i) Approval of the preliminary plan and/or site plan shall be set forth in a letter mailed by the Department of Planning and Zoning. This letter may include such conditions as are necessary to meet the standards of the Zoning Code and Subdivision Regulations, and must be countersigned by the developer and returned to the Department of Planning and Zoning within 45 days.

Furthermore, the subdivision regulations, in section 9.01, provide a specific avenue of appeal for a person aggrieved by a

decision of the Planning Commission [19] with regard to the subdivision of property: "Any person ... aggrieved by any decision of said Planning Commission may within thirty days after the filing of such decision in the office of the Planning Commission appeal to the circuit court for Harford County." Harford County Subdivision Regulations § 9.01. Thus, separate regulations govern the subdivision process, including preliminary plan approval, and appeals are taken through an appellate process different than the process by which an individual appeals from a decision of the Zoning Administrator under Part I of the zoning provisions of the Code. Therefore, if we construe the Hiters' attorney's 5 October 1994 letter as a challenge to the Director of the DPZ regarding a preliminary plan of subdivision, rather than as a request for a responsive interpretation from the Zoning Administrator under Part I of the zoning provisions, the fact that the Hiters thereafter appealed to the Board of Appeals pursuant to section 267–7E of the Code, rather than to the circuit court pursuant to section 9.01 of the subdivision regulations, could serve as the basis for the decision to dismiss the Hiters' appeal.

We note that the Hearing Examiner in his 17 July 1996 recommendation, in fact, did conclude, among other things, that the Hiters' challenge related to site plan approval, and therefore, that section 9.01 was their exclusive avenue of appeal. This reason served as one of the Hearing Examiner's bases for recommending that the Board of Appeals dismiss the Hiters' appeal. Because the Hiters filed their appeal with the Board of Appeals pursuant to section 267–7E, the circuit court did not state specifically that it dismissed the Hiters appeal on this basis; however, the circuit court's conclusion that the Hiters' 4 October 1995 letter related to subdivision plan approval rather than to zoning enforcement, necessarily lends itself to the conclusion that the Hiters should have appealed

---

**19.** Section 1025(a) of the Harford County Charter (printed 1973, revised 1978), abolished the Planning and Zoning Commission and transferred the "employees, records, property, and equipment of the Commission ... to the Department of Planning and Zoning."

directly to the circuit court pursuant to section 9.01 of the Subdivision Regulations.

■ We agree with and adopt the circuit court's conclusion on this issue:

The letter of [the Hiters' counsel] dated October 4, 1994 was not a letter seeking enforcement action or an opinion concerning an enforcement action within the power of the Zoning Administrator. [The Hiters' counsel's] letter was directed to the Director of Planning and Zoning in his capacity as the person reviewing the subdivision or development plan for this particular project. The letter sets forth arguments as to why that plan should not be approved. It also asks for specific opinions about the status of the plan approval and certain subsequently enacted laws. However, this letter was not a request for an opinion concerning enforcement action within the authority of the Zoning Administrator.

Because we agree that "this letter was not a request for an opinion concerning enforcement action within the authority of the Zoning Administrator," we hold that the Hiters improperly appealed to the Board of Appeals pursuant to section 267–7E. We thus affirm the circuit court's decision to affirm the Board of Appeals's decision to dismiss the Hiters' appeal for lack of jurisdiction.

2.

■ Second, even if we were to assume that the 4 October 1994 letter was a valid request for the Zoning Administrator's interpretation, we still would conclude that the 5 April 1996 letter did not constitute a "decision," and therefore, could not serve as the basis for a section 267–7E appeal. Like the circuit court, we conclude that Ms. Holdredge's 5 April 1996 letter constituted nothing more than a "mere transmittal of the preliminary plan approval and was not a response to the October 4, 1994 letter."[20] Ms. Holdredge's brief, two-para-

---

**20.** We note, with curiosity, the fact that the Harford County Subdivision Regulations clearly provide that adjacent property owners and the

graph cover letter did not mention the Hiters' 4 October 1994 letter, which they sent eighteen months prior to Ms. Holdredge's letter. Furthermore, neither the cover letter nor the attached preliminary subdivision plan approval letter specifically acknowledge addressing the Hiters' queries as such.

The fact that the approval letter actually addressed the topics of some of the Hiters' issues in the course of generally explaining the approval of the subdivision plan, does not indicate that Ms. Holdredge intended the approval letter, which was written for the purpose of expressing the preliminary subdivision plan approval, to serve a dual purpose as a ruling pursuant to her Zoning Administrator authority. To the contrary, in her affidavit before the Board of Appeals,[21] Ms. Holdredge stated:

> The April 19, 1996 *letter* [22] referred to in Applicant's Memorandum is merely a *courtesy transmittal* letter to [the

general public receive various modalities of notice of the pendency of a preliminary subdivision plan in the form of notification about the time, date, and place of the Development Advisory Committee meeting, as well as information about the type of subdivision, proposed use, and number of units requested in the plan. *See* Harford County Subdivision Regulations § 5.03(c), (d), (e) (1997). Oddly, the regulations are obscure as to who (including persons who participated in the process) the DPZ has any continuing obligation to formally notify when the plan is approved. *See id.* § 5.03(i).

21. As noted *supra* n. 12, the record contains the affidavit of Arden Case Holdredge, dated 17 July 1996, the date of the Hearing Examiner's hearing. The circuit court, in its Memorandum Opinion, stated that that affidavit was an exhibit before the Board of Appeals. Because we can find no indication to the contrary, and because the parties do not contest the circuit court's characterization of the affidavit, we assume that the affidavit properly was before the Board of Appeals and thus fair game for our consideration on review.

22. The record does not contain a letter sent from Ms. Holdredge to the Hiters' attorney on 19 April 1996. The Hiters, however, referenced this letter in the following manner at the 17 July 1996 hearing: "You will find that there are actually two decisions that were issued, one was April 5th and one was April 19th. There was a mix-up in the computer and she printed it out later on [sic] April 19th." The Hiters offered the 19 April 1996 letter as an exhibit during the course of the hearing; in their appellate brief, however, the Hiters make no mention of the existence of an 19 April 1996 letter. They contend only that the 5 April

Hiters' counsel] enclosing a copy of the preliminary plan approval letter that he previously requested, both of which were signed by me, as Director of Planning and Zoning, and not as Zoning Administrator.

(Emphasis in the original).

Furthermore, the fact that the 10 July 1996 DPZ Staff Report addresses the twelve issues the Hiters raised in their 22 April 1996 application for appeal, does little to support the Hiters' contention that the 5 April 1996 letter, in fact, was a "decision" of the Zoning Administrator. The Staff Report is but another piece of evidence that the Board of Appeals may consider in rendering its decision in an appeal. In the cover letter Mr. McClune filed with the Staff Report, he specifically stated:

Our Staff Report is furnished to the Hearing Examiner to provide general information concerning the request, the subject property, and background data. The report as well as our Department's recommendation, is submitted for information purposes only, as any finding in the Board of Appeals case must necessarily be the decision of the Zoning Hearing Examiner alone.

We therefore conclude that the Staff Report is entitled to no special weight, and although in this case the Staff Report addressed several of the Hiters' issues, this report is in no way a substitute for a "decision of the Zoning Administrator." Without such a "decision," the Hiters have no basis for the present appeal.

Lastly, the fact that the County Council amended section 267–7B(5), effective 14 November 1994, by adding language requiring the Zoning Administrator to issue an interpretation within sixty calendar days after receiving the request for the

1996 letter constitutes a "decision of the Zoning Administrator." Furthermore, in the Hiters' "Applicant's Memorandum" filed with the Board of Appeals in July 1996, the Hiters make no mention of a 19 April 1996 letter. For purposes of this appeal, therefore, we assume that the 19 April 1996 letter that Ms. Holdredge referred to in her affidavit in fact is the 5 April 1996 letter.

interpretation, *see* § 267–7B(5)(a), (b), offers the Hiters little additional support for their claim. To the contrary, the fact that the Hiters received no response from the Zoning Administrator within the time period added by the 1994 amendment supports our conclusion that the Zoning Administrator did not intend to offer an interpretation or decision in response to the Hiters' letter.[23] Moreover, it would be unreasonable for the Hiters to assume that a letter from the DPZ Director sent eighteen months later was the response contemplated by section 267–7B(5), regardless of whether specific time constraints existed. The only reasonable expectation, if the time limits added by the 1994 amendment were applicable, would be that the Hiters, if they had a right of appeal under sections 267–7B(5) and 267–7E, could complain that the Zoning Administrator had failed to make a timely response. Such a claim, however, would have ripened for administrative appeal or mandamus purposes no later than sixty days after the effective date of the 1994 amendment. Accordingly, the Hiters' effort to appeal on 22 April 1996 would be untimely. In the absence of the time constraints imposed by the 1994 amendments, the Hiters' attempt to appeal the 1996 letter as a response to their 1994 letter would have to overcome an obvious laches-type argument.

Based on the foregoing, even if the Hiters' letter was a valid request for the interpretation of the Zoning Administrator, we conclude that the 5 April 1996 letter offered the Hiters no

---

**23.** We pause to wonder aloud, in jurisdictions that provide for persons to request and ostensibly obtain zoning interpretations from a governmental official (such as section 267–7B(5) provides), how the jurisdictions administratively determine which such requests to honor and which to ignore, as appears to have been the case with regard to the Hiters' 4 October 1994 letter. If the zoning provisions of the County Code were implicated by those portions of the Hiters' letter that clearly are directed at the 1981 concept plan (or an amended version thereof), *see supra* n. 2 and n. 18, it may be fairly characterized by some as arbitrary and capricious for the Zoning Administrator to have ignored the Hiters' letter merely because it was misdirected to the Director of Planning and Zoning, his or her doppelganger for mail distribution purposes. Fortunately for appellees in the instant case, we are unable to reach an analysis and holding on that score based on what is before us.

appealable decision. Accordingly, we affirm the decision of the circuit court with respect to Case I.

*Case II*

In Case II, the Hiters contend that the circuit court erred in granting appellees' motion to dismiss the Hiters' Petition for Judicial Review and/or Declaratory Relief. The Hiters filed their petition pursuant to Maryland Rule 7–202 and section 9.01 of the Harford County Subdivision Regulations, therein challenging Harford County's 13 March 1997 decision to approve the issuance of a stormwater and grading permits to SMC for Phase I of the Hollywoods subdivision. The circuit court dismissed the case because (1) the court lacked the jurisdiction to review Harford County's issuance of the permits and (2) the Hiters improperly joined their petition for declaratory relief with their petition for judicial review. With regard to the petition for declaratory relief, the Hiters, in this appeal, do not challenge the circuit court's decision.[24] Therefore, we will not consider that issue here. *See* Md. Rule 8–504(a)(5); *see also Jacober v. High Hill Realty, Inc.,* 22 Md.App. 115, 125, 321 A.2d 838 (1974) ("We decline to consider the argument as it was not presented in the brief."). With regard to the petition for judicial review, we agree with the circuit court and affirm its decision.

The permits in question were issued by the Harford County Director of Public Works ("DPW"), William T. Baker, Jr., on 13 March 1997. The Hiters, in their brief, claim that "[n]o permits could or should be issued by the Dep[artment] of Public Works in contravention of the approved Subdivision plans without the Director of Planning approving or acquiescing in the issuance of such a permit." Based on their argument that the DPZ must approve the issuance of such a permit, the Hiters contend that section 9.01 of the subdivision

---

**24.** In their appellate brief, the Hiters state only that "[t]he Circuit Court erred in dismissing Appellants Petition for Judicial Review from the decision of the Department of Planning and Zoning (who has been substituted in the Harford County Subdivision regulations for the Planning Commission) pursuant to Section 9.01 thereof."

regulations provides them the right to appeal the issuance of such a permit to the circuit court. Section 9.01 provides, in pertinent part: "Any person ... aggrieved by any decision of said Planning Commission[ [25]] may within thirty days after the filing of such decision in the office of the Planning Commission appeal to the Circuit Court for Harford County."

██ We can find no authority, and the Hiters offer none, for their proposition that the DPZ must approve all permits related to subdivision plans that are issued by the DPW. To the contrary, the sections of the Harford County Code regarding "sediment control" and "stormwater management," state only that the Department of Public Works is responsible for the issuance of grading and stormwater permits. These sections do not require DPZ approval prior to DPW issuance of the permits. Section 214-1 of the Harford County Code (Article I—Sediment Control) provides:

PERMIT—The county grading permit issued by the Department, authorizing land-disturbing activities in excess of fifteen thousand (15,000) square feet or moving five hundred (500) or more cubic yards of earth in any continuous twelve-month period and also in accordance with the requirements in this Article [Sediment Control].

DEPARTMENT—The Department of Public Works.

In addition, with respect to obtaining a grading permit, section 214-2 of the Code provides:

A. No person shall engage in any land-disturbing activity over fifteen thousand (15,000) square feet or moving more than five hundred (500) cubic yards of earth in any continuous twelve-month period without first obtaining a permit from the county, except as provided for in this Article.

Furthermore, with respect to stormwater management, section 214-26 of the Code (Article II—Stormwater Management) provides:

---

25. The Planning Commission is the Department of Planning and Zoning. *See supra* n. 19.

B. The Harford County Department of Public Works shall be responsible for the coordination and enforcement of the provisions of this Article [Stormwater Management].

Lastly, section 214–27 sets forth the relevant definitions for Article II (Stormwater Management):

DEPARTMENT—The Department of Public Works.

GRADING PERMIT—The section of the grading/stormwater management permit that allows land disturbance in excess of twenty-two thousand (22,000) square feet pursuant to Article I of this chapter [Sediment Control].

STORMWATER MANAGEMENT PERMIT—The section of the grading/stormwater management permit that requires installation of a stormwater management facility pursuant to this Article.

Thus, neither the provisions regarding sediment control nor the provisions regarding stormwater management mandate that the DPZ must approve the DPW's issuance of a stormwater or grading permit.

As the circuit court so eloquently explained in its Memorandum Opinion dated 27 May 1997:

Turning next to Case No. 3817 [Case II] we conclude that the case should be dismissed since the act of issuing the grading permit and the stormwater [sic] management permit were acts of the Director of Public Works and not acts of the Department of Planning and Zoning.

The Hiters proffer that if allowed to produce evidence they would be able to show that the Department of Planning and Zoning was involved in reviewing these permits. We accept as a matter of fact that the Department of Planning would be asked to comment upon the applications before they were approved by the Department of Public Works. However, a right to comment is not the equivalent of a power to approve. A given governmental department may well be required by law to allow interested property owners to comment on a particular application. However, that right to comment is not the equivalent of a power to approve or disapprove. The Director of the Department of

Public Works certainly has the right and would be expected to seek comment from other departments as to whether or not an application was consistent with plans that that department had approved. This would apply to a number of departments other than the Department of Planning and Zoning. However, that does not mean that the final decision to grant or deny the permit is taken away from the Department of Public Works. The actual issuance of each of the permits in question was by the Department of Public Works and no authority has been cited to us that granted a right of appeal from the action of the Director of Public Works to the Circuit Court. Therefore, the petition for judicial review must be denied.

Adopting the circuit court's opinion in this regard, we conclude that the circuit court properly dismissed the Hiters' petition for judicial review.[26]

JUDGMENTS AFFIRMED;

APPELLANTS TO PAY THE COSTS.

---

**26.** We make no comment regarding the appropriate forum for review of the decisions of the Department of Public Works. We do note, however, that at oral argument, appellees argued that an internal administrative body, pursuant to the Harford County APA, reviews the decisions of the Department of Public Works when appealed.